1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                          **DISTRICT OF NEVADA**
8                                  * * *
9    PARNELL COLVIN, *et al.*,                    Case No. 2:21-cv-02109-RFB-NJK
10                   Plaintiffs,                              **ORDER**
11         v.
12   TOMMY WHITE AKA THOMAS WHITE,
     *et al.*,
13
                     Defendants.
14

15

16         **I.    INTRODUCTION**

17         Before the Court is Plaintiffs' motion for partial summary judgment (ECF No. 76) and

18   Defendants' motion for summary judgment (ECF No. 77). Pending before the Court are additional

19   miscellaneous motions, including a motion to "address misinformation during hearing" (ECF No.

20   91), a motion to withdraw as attorney (ECF No. 94), a motion for leave to file (ECF No. 96), and

21   a motion to strike (ECF No. 95). For the following reasons, the Court grants Defendants' motion

22   for summary judgment and Plaintiffs' motion to withdraw. The remaining motions are denied.

23         **II.   PROCEDURAL BACKGROUND**

24         On November 29, 2021, Plaintiffs Parnell Colvin and Richard Vella, proceeding *pro se*,

25   filed a Complaint against Defendants, Local 872 and Thomas White. ECF No. 1. On September

26   22, 2023, Plaintiffs received pro bono counsel. ECF No. 58. On December 4, 2023, Plaintiffs filed

27   the Second Amended Complaint ("SAC"). ECF No. 66. On January 8, 2024, the Defendants filed

28   a motion to dismiss the SAC. ECF No. 70. This was fully briefed by January 29, 2024. ECF Nos.

71, 72. Discovery ended on July 3. ECF Nos. 73, 74. On September 3, the Court held a hearing and denied the Defendants' motion to dismiss the SAC. ECF No. 82.

On August 2, 2024, the Plaintiffs filed the instant motion for partial summary judgment. ECF No. 76. The same day, Defendants filed the instant motion for summary judgment. ECF No. 77. Alongside their motion for summary judgment, Defendants filed a request for judicial notice. ECF No. 78. Following a motion to extend time, Plaintiffs filed a Response and Defendants replied. ECF Nos. 80, 81, 83, 88. The Plaintiffs' motion for partial summary judgment was fully briefed by September 27, 2024. ECF No. 84, 86. The Court held a hearing on the instant motions on November 26. ECF No. 90.

On December 4, 2024, Plaintiffs filed a motion to address misinformation during the hearing, ECF No. 91, which Defendants moved to strike, ECF No. 95. Plaintiffs responded to the motion to strike on January 2. ECF No. 105. On December 4, Plaintiffs' counsel filed a motion to withdraw. ECF No. 94. This motion was briefed by December 18, though Plaintiffs filed additional motions in response as late as December 26. ECF Nos. 97, 99, 100, 102, 103. On December 12, Plaintiffs filed a motion for leave to file. ECF No. 96. This motion was briefed by January 2. ECF Nos. 104, 106.

This Order follows.

## III.    FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.

### A.  Undisputed Facts

#### i.  Dues

Local 872 collects several types of payments from its members. The "over the counter" or "monthly membership" dues are fixed at a particular rate per month, while the "working" or "supplemental" dues represent an amount specified per hour of work that is covered by Local 872's Master Labor Agreement ("MLA") with the Nevada Contractors Association ("NCA"). The supplemental dues are $2.04 for each hour worked by or paid to workers covered under the NCA MLA.

The Supplemental Dues Authorization card is often called a dues checkoff authorization

1  card. It authorizes one of the Union-related trust funds, the Vacation Fund, to deduct from the

2  member's undisbursed vacation benefit an amount specified in the Master Labor Agreement "for

3  all hours paid for or worked by me on or after January 1, 1994, and remit said amount directly to"

4  Local 872 as "supplemental dues."

5      Sometime in 1998, there was an authorization to increase supplemental dues formulaically

6  by 1 cent for every 25 cents the Union negotiated in increases elsewhere.

7                                **ii.**   The Union

8      Laborers' International Union of North America is a labor union. Local 872 is one of the

9  International's affiliates. Defendant White is the Business Manager of Local 872.

10                              **iii.**   Plaintiff Colvin

11     Parnell Colvin first enrolled as a member of Laborers' Local 872 in Las Vegas on June 1,

12  2015, as a transferee from Local Union 296 in Oregon. He signed a membership authorization card

13  and a Supplemental Dues Authorization card. On March 6, 2018, Colvin wrote to Local 872

14  informing the Union that he wanted to opt out of supplemental dues.

15     The Union interpreted this as a revocation of his supplemental dues authorization card, or

16  his supplemental dues checkoff. The Union, through one of its attorneys, responded to Mr. Colvin

17  on March 9, 2018. The letter informed Colvin he could revoke the authorization but if he did "you

18  will be personally responsible for submitting your supplemental dues payments directly to the

19  Local Union in a timely fashion." The letter also advised Colvin that "[y]ou have the right under

20  federal law to opt out of dues deduction, but then your financial membership obligation requires

21  you to pay those dues directly to the Local Union. If you fail to pay them timely, the Local Union

22  will take appropriate and lawful action."

23     Later, on March 30, 2018, the Union responded to Colvin's March 6 request, stating that it

24  was untimely and the dues checkoff would remain in effect.

25     Mr. Colvin filed charges with the NLRB over the refusal to honor the revocation, which

26  was ultimately settled. The settlement provided that Local 872 would honor the supplemental dues

27  checkoff revocation and refund any dues collected via the checkoff. Colvin was informed of this

28  by letter dated October 15, 2020: "Although Local 872 believes it was correct in not accepting the

1    cancellation, the Union has decided to refund those dues in their entirety."

2         Later, on December 10, 2020, Defendant White sent a letter to Colvin informing him that

3    members have an obligation to remain current on dues and that he had not made arrangements to

4    pay the supplemental dues in arrears. As such, he would be terminated from membership effective

5    July 1, 2019, for the nonpayment of the supplemental dues in arrears. The letter also informed

6    Colvin that Defendant White was rejecting his attempt to pay monthly dues because the Union

7    does not accept partial dues payments.

8               **iv.**  <u>Plaintiff Vela</u>

9         Richard Vela first enrolled as a member in Local 872 on September 24, 1996, by signing a

10    representation authorization card. He also signed a Supplemental Dues Authorization card on the

11    same day.

12         Vela attempted to revoke his supplemental dues checkoff authorization on March 28, 2019.

13    Local 872's attorney responded on April 3, 2019, denying the revocation because it was not proper.

14    Vela submitted a revised revocation on September 10, 2019. The Union, through counsel,

15    responded via a letter dated September 18, 2019, and accepted the revocation. As with Plaintiff

16    Colvin, the letter accepting the revocation advised Vela that he would "be responsible for paying

17    the dues directly in order to maintain your membership. If you do not maintain your dues as

18    required by our Constitution, you will be suspended and eventually dropped from membership. . .

19    . Your obligation now is to pay the dues directly."

20         The Union then wrote Vela's employer, Mountain West Excavation & Utilities, LLC, on

21    September 18, 2019. In its letter, the Union noted that Vela had revoked the supplemental dues

22    checkoff authorization. It also said that Vela was responsible for "remitting supplemental dues to

23    Laborers Local #872 personally."

24         On January 16, 2020, Vela filed charges against the Executive Board of the Union for

25    removing him from the January 6, 2020, general membership meeting. These charges were

26    rejected by then International Union President Terry O'Sullivan. In a February 7, 2020, letter, he

27    concluded that it was proper for Local 872 to deny Vela entry to the membership meeting on

28    January 6, 2020, because he was no longer a member in good standing because he stopped paying

his supplemental dues. Local 872 reiterated this understanding.

The Union, through counsel, then sent Vela a letter on February 3, 2020. In this letter, the Union's counsel wrote that the Union sent Vela an invoice for supplemental dues. The Union's counsel indicated that Vela would lose his Union membership rights if he failed to pay supplemental dues.

Vela wrote to the Union's counsel on February 5, 2020. In his letter, Vela wrote "[s]ince you state the obligation [to pay supplemental dues] does not arise from the collective bargaining agreement, then, please explain further my obligation to pay and where it arises from regarding my membership, my Membership Rights and Supplemental Dues and/or PAC Funds."

The Union's counsel wrote to Vela on February 6, 2020. The Union's counsel wrote that Vela was suspended from membership in 2019.

### B. Disputed Facts

The parties dispute the legal implications of the undisputed facts, including whether Plaintiffs were removed from the Union in retaliation, or due to their failure to pay the supplemental fees, whether the supplemental fees were appropriately authorized and mandatory, and whether Defendant White breached his fiduciary duty by removing Plaintiffs from the Union without due process.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in

1    original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual

2    disputes or make credibility determinations at the summary judgment stage. <u>Zetwick v. Cnty. of</u>

3    <u>Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

4         **V.    DISCUSSION**

5         **A.  Plaintiffs' Motion for Partial Summary Judgment**

6         Plaintiffs move for summary judgment on two causes of action: (1) Defendants violated

7    Colvin and Vela's procedural due process rights under 29 U.S.C. § 411(a)(5); and (2) White, as

8    Local 872's Business Manager Secretary Treasurer, violated his common law fiduciary duty to

9    Plaintiffs by expelling them without procedural due process. For the following reasons, the Court

10   denies the Plaintiffs' motion for partial summary judgment, finding that there are no disputes of

11   material fact and both of their claims fail as a matter of law.

12        i.  <u>Plaintiffs' Cause of Action Under 29 U.S.C. § 411(a)(5)</u>

13        Section 411 sets out the core of the guarantees afforded to members of labor organizations

14   by the Labor Management Reporting and Disclosure Act. 29 U.S.C. §§ 401–5312. It is a "[b]ill of

15   [r]ights" that is "designed to guarantee every union member equal rights to vote and otherwise

16   participate in union decisions, freedom from unreasonable restrictions on speech and assembly,

17   and protection from improper discipline." <u>Local No. 82, Furniture & Piano Moving v. Crowley</u>,

18   467 U.S. 526, 536-37 (1984). The LMRDA contains two provisions that enable union members to

19   enforce their rights: §§ 412 and 529.

20        Section 412 confers a private cause of action on union members for a union's infringement

21   of the rights secured by §§ 411-15. To state a claim under § 412, Plaintiffs must show that the

22   labor organization infringed a right secured by §§ 411, 412, 413, 414, or 415. 29 U.S.C. § 412.

23        Here, Plaintiffs are alleging a violation of § 411(a)(5), which provides that no member of

24   a labor organization "may be fined, suspended, expelled, or otherwise disciplined except for

25   nonpayment of dues . . . unless such member has been (A) served with written specific charges;

26   (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing." 29

27   U.S.C. § 411(a)(5).

28        It is undisputed that both Plaintiffs were expelled without being provided a full and fair

1  hearing. Defendants would thus have infringed on Plaintiffs rights under § 411(a)(5), by expelling

2  them without the proper procedures, *unless* the expulsion concerned the "nonpayment of dues."

3        It is also undisputed that Plaintiffs stopped paying their "supplemental dues." What is

4  disputed is whether these dues were properly imposed under the Labor Union's Constitution and

5  whether these dues were voluntary. As Plaintiffs argue in their Motion for Partial Summary

6  Judgment, "[g]iven that Local 872 and White expelled Colvin and Vela without notice, the sole

7  issue is whether Colvin and Vela owed supplemental dues to Local 872."

8                                    *1.  Local Union Constitution*

9        "When reviewing a union's interpretation of its own constitution, our review is

10  deferential." <u>Loc. 1052 of United Bhd. of Carpenters & Joiners of Am. v. Los Angeles Cnty. Dist.</u>

11  <u>Council of Carpenters</u>, 944 F.2d 610, 613 (9th Cir. 1991). "There is a well-established federal

12  policy of avoiding unnecessary interference in the internal affairs of unions . . . . [A]bsent bad faith

13  or special circumstances, an interpretation of a union constitution by union officials, as well as

14  interpretations of the union's rules and regulations, should not be disturbed by the court." <u>Motion</u>

15  <u>Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians, Local 695</u>, 800

16  F.2d 973, 975 (9th Cir. 1986); <u>Stelling v. International Bhd. of Elec. Workers, Local 1547</u>, 587

17  F.2d 1379, 1389 (9th Cir. 1978) (affirming reasonable union construction of constitution despite

18  ambiguity in constitutional provisions).

19        Furthermore, any "intrusion into the internal structure or affairs of an association" by the

20  government may unconstitutionally burden the organization's constitutionally protected freedom

21  of association. <u>Boy Scouts of Am. v. Dale</u>, 530 U.S. 640, 647–48 (2000); <u>Motion Picture &</u>

22  <u>Videotape Editors</u>, 800 F.2d at 976 ("Absent a specific limitation in a union constitution, this court

23  will not interfere with the efforts of a union's leaders to manage the affairs of their organization.").

24        In their Motion for Partial Summary Judgment, Plaintiffs provide no evidence that

25  supplemental dues are voluntary.[1] Instead, their argument is that the dues were never properly

26

27          [1] The only evidence that Plaintiffs provide to argue that the fees were not voluntary is a Declaration
by a Local 872 union member, George McDonald, where he states that supplemental dues were voluntary.

28  As this evidence was introduced for the first time in a reply brief, the Court declines to consider it. <u>Provenz</u>

adopted. They cite to how Defendant White, in his deposition, failed to provide evidence of when Local 872 authorized supplemental dues through a vote at either the District Counsel level or the local level. Therefore, they argue, the dues were not properly imposed and Plaintiffs did not owe them. However, as Plaintiffs themselves admit, "this is not a collateral attack on dues," and the Court need not wade into the union's internal procedures for implementing dues decades ago when the parties are not challenging the dues themselves, but whether they can be expelled for failure to pay them. For that, it is sufficient to find that, regardless of when exactly the dues were established or through what procedures, it is an undisputed fact that they are a form of dues that Local 872 imposes and have been imposed since Vela and Colvin became members in 1996 and 2015.

Plaintiffs next argue that Defendant White and President O'Sullivan provide "shifting explanations" for the supplemental dues. However, if their explanations differ, they differ solely in whether it is mandatory or discretionary for a local union to initially impose these dues. This is not a material fact, as it is undisputed that Local 872 does impose them. Their motivations for imposing them – decades ago – are not at issue. Instead, what is at issue, is whether failure to pay them can lead to expulsion. In support of this, both Defendant White and Defendant O'Sullivan cite to the same provision of the Local Union's Constitution.

Article III, Section 1(e) of the Local Union Constitution obligates applicants for membership to "tender to the Local Union in which membership is sought, the initiation fee, dues and other lawful fees and assessments that prevail in said Local Union." Members are obligated under Article III, Section 3(i) to "pay to the Local Union such initiation fee, dues, and other lawful fees and assessments as are fixed and established pursuant to constitutional authority." "Persons who are in arrears have no right to attend meetings, nor any other rights." Art. VIII, § 7.

Nothing in the Constitution suggests that Local 872 may only assess monthly membership dues, and not supplemental dues, or that supplemental dues are voluntary. A plain reading of "dues" is to include all dues the local union imposes. It is an undisputed fact that Local 872 imposes both monthly membership dues and supplemental dues. Therefore, Local 872's interpretation of

---

v. Miller, 102 F.3d 1478, 1483 (9th Cir.1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond.") (internal quotation marks omitted).

its own constitution, as requiring the payment of "dues" to include "supplemental dues" is reasonable and entitled to substantial deference.

Since Plaintiffs failed to pay the supplemental dues, they were expelled from membership. Though they were not provided notice, § 411(a)(5) provides that a member of a labor organization may be expelled without such notice if it concerns nonpayment of dues. Therefore, Plaintiffs' second cause of action fails as a matter of law.

ii.  Plaintiffs' Cause of Action for Breach of Fiduciary Duty

Plaintiffs' cause of action for breach of fiduciary duty also fails as a matter of law. "[T]he duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests." Shoen v. SAC Holding Corp., 137 P.3d 1171, 1178 (Nev. 2006), abrogated on other grounds by Guzman v. Johnson, 483 P.3d 531 (Nev. 2021). "NRS 78.138(7) provides the sole avenue to hold directors and officers individually liable for damages arising from official conduct." Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark, 458 P.3d 336, 340 (Nev. 2020). A breach of fiduciary duties must further involve "intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138(7)(b)(1)-(2).

It is not a breach of fiduciary duty to enforce payment obligations in accordance with the Union's constitution. Plaintiffs offer no evidence that Defendant White engaged in intentional misconduct, fraud, or a knowing violation of law. Therefore, this claim fails as a matter of law.

**B.  Defendants' Motion for Summary Judgment**

Defendants argue that all three of Plaintiffs' claims fail. As stated above, Plaintiffs' second cause of action for a violation of 29 U.S.C. § 411(A)(5) and third cause of action for breach of fiduciary duty fail as a matter of law. So too does Plaintiffs' first cause of action for a violation of 29 U.S.C. § 529. Plaintiffs have failed to establish facts such that a causal link between their protected activities and an adverse action may be inferred. Plaintiffs have also failed to offer "specific and substantial evidence" that the Union's motive for removing them was different from its stated motive, which was Plaintiffs' continued nonpayment of supplemental dues.

i.  Plaintiffs' Cause of Action Under 29 U.S.C. § 529

- 9 -

Section 529 provides members a private cause of action when their union fines, suspends, expels, "or otherwise discipline[s]" them for exercising any right to which they are entitled under the LMRDA. 29 U.S.C. § 529. "The primary difference between § [529] and § [412] is that [the former] protects against retaliation for the exercise of any right secured under the LMRDA, whereas [the latter] only protects rights secured under [§§ 411-15]." United Steel Workers Local 12–369 v. United Steel Workers Int'l, 728 F.3d 1107, 1115 (9th Cir. 2013) (citation omitted). Depending on the right the member seeks to protect, §§ 412 and 529 can be entirely duplicative. See id. at 1115 n.4 (citation omitted). To prevail under § 529, plaintiffs must prove that (1) they are members of a labor organization; (2) the organization fined, suspended, expelled, or otherwise disciplined them; and (3) the organization imposed the punishment in retaliation for their exercise of a right protected by the LMRDA. See 29 U.S.C. § 529.

Here, it is an undisputed fact that Plaintiffs were members of a labor organization. It is also undisputed that they were expelled from the union. What the parties contest is whether Plaintiffs were expelled in retaliation for their exercise of rights protected under § 411(a)(2), as Plaintiffs argue, or whether they were expelled for failure to pay dues, as Defendants argue.

### 1. Section 411(a)(2)

Section 411(a)(2) of the LMRDA provides, among other things, that "[e]very member of any labor organization shall have the right to . . . express at meetings of the labor organization his views . . . upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of the meetings." 29 U.S.C. § 411(a)(2). To state a cause of action for a violation of § 411(a)(2), a union member must allege facts showing that: "(1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) retaliatory action was a 'direct result of his or her decision to express disagreement' with the union's leadership." Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Loc. 142, 269 F.3d 1042, 1058 (9th Cir. 2001).

Defendants do not contest that Plaintiffs suffered an adverse action (expulsion). Instead, they contest whether Plaintiffs were engaged in activity protected under this section and the existence of a causal connection between any such activity and the expulsion.

1

**a.** Adverse Action

2      Under Section 411(a)(2), every member has the right to "express any views, arguments, or

3  opinions." Defendants argue that Plaintiff Colvin never engaged in activity protected under Section

4  411(a)(2) because he never sought to attend a Union meeting. Plaintiffs allege that Plaintiff Colvin

5  engaged in a number of protected activities. This includes: (1) participating in a group called

6  Committee to Elect Members First, in which he (with other candidates, including Plaintiff Vela)

7  ran with a slate of candidates to replace current union membership; (2) speaking to Union officials

8  (with Plaintiff Vela on the line) regarding the Out of Work List, expressing his views to Dawn

9  Wilson (Office Manager), Marco Hernandez (Vice President), Chelsea Torres and Henry Baker

10  (Field Agents), and Defendant White; (3) speaking to Union officials regarding wages taken out

11  of member's paychecks and placed in a vacation fund where it remained inaccessible for 3 months;

12  and (4) complaining to the NRLB regarding Union practices, including unfair labor practices;

13  members not having access to grievances; Tommy White's overpay; abuse of the executive board;

14  the Vacation Trust Fund; and complaints as to how the Union administers the hiring hall.

15      Plaintiff Vela, meanwhile, alleges that he: (1) made requests for financial information; (2)

16  complained about salaries for the executives in the Union; (3) complained about wasteful

17  expenditures, and (4) was removed from two meetings, one in January of 2020 and another on a

18  date he could not remember.

19      The Court finds that Section 411(a)(2) is not limited to a right to attend meetings. See

20  Kofoed v. Int'l Bhd. of Elec. Workers, Loc. 48, 237 F.3d 1001, 1005 (9th Cir. 2001) (citing to

21  cases where claims were brought concerning alleged retaliation due to Plaintiffs' support of

22  alternative candidates in union elections, crossing union picket lines, and discussing union affairs

23  in public). Therefore, the record sufficiently demonstrates that both Plaintiffs exercised their rights

24  under Section 411(a)(2) by publicly criticizing Union leaders. See Casumpang, 269 F.3d at 1058

25  (holding that a retaliation claim under § 411(a)(2) only requires the plaintiff to allege that "she

26  exercised the right to oppose union policies").

27

**b.** Causal Connection

28      The Court must next examine whether Plaintiffs have established a genuine issue of

- 11 -

material fact as to whether the adverse action taken against them was a direct result of their decision to express disagreement with the Union's leadership. Specifically, the Court must determine whether Plaintiff has alleged facts such that a causal link between their protected activities and the adverse action may be inferred. The Court is permitted to make such an inference if there is proximity in time between the protected activities and the allegedly retaliatory action. See Casumpang, 269 F.3d at 1059 (finding that retaliation could be inferred where plaintiff criticized union leadership at a convention and was suspended from membership four months later); cf. Villiarmo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (finding that retaliation could not be inferred where alleged retaliatory termination occurred 18 months after plaintiff filed sexual harassment claim).

To determine whether Plaintiffs have established proximity between their protected conduct and Defendants' alleged retaliatory action, the Court must examine the timeline of events resulting in Plaintiffs' expulsion.

Plaintiff Colvin provides a list of topics on which he spoke out and critiqued Union leadership. These events occurred between 2016-2017. He was notified of his removal from the Union in July 2019, via a letter sent on December 10, 2020. Therefore, the removal occurred years after the majority of Plaintiff Colvin's public critiques of the Union.

Plaintiff Vela does not provide the dates for any of the protected activities described above, except for the date of one of the meetings from which Vela was removed. He states that this meeting occurred in January 2020. In a letter dated February 6, 2020, Vela was informed that the reason he was removed from the meeting was that he had been suspended from membership due to his nonpayment of dues: "Local 872 followed best practices and voluntarily provided notice to you through invoices of November 4, 2019 (for September hours) and December 20, 2019 (for October hours), and on January 27, 2020 (for November hours), detailing your working dues obligations. You owed payment on you September hours on the first day of the month, October 1, and, having not paid those working dues in October or November, you were automatically suspended December 1. . . Accordingly, it was proper for Local Union 872 to deny you entry to the January 6 general membership meeting because you had been suspended from membership for

1  nonpayment of dues." Therefore, Vela was removed from the Union *before* the meeting due to his

2  failure to pay the supplemental dues, not *because* he sought to attend the meeting and speak out.

3         In summary, Plaintiffs fail to provide a clear timeline of their alleged protected activities.

4  The dates that the Court does have – including the various critiques made by Plaintiff Colvin in

5  2016-2017 and Plaintiff Vela's removal from the general membership meeting in January 2020 –

6  do not support an inference that these activities are what motivated the Union to remove them.

7  Instead, the Union was engaged in active disputes with Plaintiffs regarding their failure to pay the

8  dues, which culminated in their removal from the Union due to their continued nonpayment.

9                                         **c.**  Legitimate Non–Discriminatory Reason

10        A plaintiff's claim may fail as a matter of law if they fail to "demonstrate that defendants'

11 non-discriminatory reason for his discharge was 'pretext for impermissible retaliation.'" Fox v.

12 Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union, Loc. No. 24, AFL-CIO,

13 428 F. App'x 767, 768 (9th Cir. 2011). If a plaintiff offers only circumstantial evidence that the

14 union's motive for taking the adverse action was different from its stated motive, such

15 circumstantial evidence must be specific and substantial evidence of pretext. Stegall v. Citadel

16 Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).

17        Plaintiffs contend that the Union's stated reason for expulsion (non-payment of dues) was

18 simply pretext. For example, Plaintiff Colvin contends that, if the real reason that he was removed

19 was the failure to pay the supplemental dues, then it does not make sense why the Union waited

20 so long to remove him (he sent the letter seeking to terminate the supplemental dues checkoff on

21 March 6, 2018, but was not notified of his removal until December 10, 2020). However, there were

22 intervening disputes that explain this delay. At first, the Union found that he had improperly sought

23 to terminate the supplemental dues checkoff. After a settlement through the NLRB, the Union

24 agreed to honor the supplemental dues checkoff revocation on October 15, 2020. A month later,

25 the Union notified him that his membership had been terminated because he had failed to pay the

26 supplemental dues in arrears. Plaintiffs' sole evidence that the failure to pay constitutes pretext is

27 the delay between the dates Plaintiffs sought to terminate payments and their removal from the

28 Union. This does not constitute "specific and substantial evidence" that the Union's motive for

1   removing them was different from its stated motive. <u>Stegall</u>, 350 F.3d at 1066.

2   ### C. Pending Non–Dispositive Motions

3   As a final matter, the Court addresses several pending non-dispositive motions in this case.

4   #### i.   Request for Judicial Notice

5   The Court takes judicial notice of the NLRB decision dated July 11, 2024, as it is a matter

6   of public record. A court may take judicial notice of a fact that is not "subject to reasonable dispute

7   in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

8   capable of accurate and ready determination by resort to sources whose accuracy cannot

9   reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201 "a court may take judicial notice

10  of matters of public record." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

11  However, the Court notes that the NLRB decision is not dispositive in this case as the alleged

12  unfair labor practices addressed in the decision are not the same claims as raised in Plaintiffs'

13  SAC.[2] Instead, Plaintiffs' three causes of action fail for the reasons discussed above.

14  #### ii.   Motion to Strike

15  District courts have authority to strike an improper filing under their inherent power to

16  control the docket. <u>See e.g.</u>, <u>Ready Transp., Inc. v. AAR Mfg., Inc.</u>, 627 F.3d 402, 404 (9th Cir.

17  2010); <u>Metzger v. Hussman</u>, 682 F. Supp. 1109, 1110-11 (D. Nev. 1988). Courts consider whether

18  striking the filing would "further the overall resolution of the action," and whether the filer has a

19  history of excessive and repetitive filing that have complicated proceedings. <u>Jones v. Skolnik</u>, Case

20  No. 3:10-cv-00162-LRH-VPC, 2015 WL 685228, at *2 (D. Nev. Feb. 18, 2015). Courts have

21  expressed reluctance at striking filings without some showing of prejudice to the moving party.

22  <u>See, e.g.</u>, <u>Mitchell v. Nev. Dept. Of Corr.</u>, Case No. 2:16-cv-00037-RFB-NJK, 2017 U.S. Dist.

23  LEXIS 174002, at *1 (D. Nev. Oct. 20, 2017). Here, while Plaintiffs have a history of excessive

24  filing, Defendants have articulated no showing of prejudice arising from the filing. Therefore, the

25  Court denies the motion to strike.

26  #### iii.   Motion to Address Misinformation

27

28  _____

[2] That case involved actions taken by the Union in its operation of an exclusive hiring hall. The NLRB recommended dismissing the complaint in its entirety.

Plaintiffs remain represented by counsel. They filed their motion concerning misinformation at the hearing while still represented, wherein they seek to relitigate a hearing where they were represented by counsel. Local Rule IA 11-6(a) of the United States District Court for the District of Nevada provides that "[u]nless the court orders otherwise, a party who has appeared by attorney cannot while so represented appear or act in the case. This means that once an attorney makes an appearance on behalf of a party, that party may not personally file a document with the court; all filings must thereafter be made by the attorney." Plaintiffs' *pro se* filing violates the Local Rules. Additionally, the Court has reviewed the filing and finds that Plaintiffs have articulated no "misinformation" that occurred during the November 26 hearing. Therefore, the motion is denied.

iv.   Motion for Leave to File

Plaintiffs' motion for leave to file a supplement to their motion for partial summary judgment was filed by their counsel. Plaintiffs are seeking to introduce a series of exhibits: Exhibits 1 and 2 are Plaintiffs' Declarations arguing their theory of the case, Exhibit 3 is an unsigned and undated Confidential Witness Affidavit, Exhibits 4-11 are emails, Exhibits 12-19 are pay stubs, and Exhibit 21 is a Las Vegas Review Journal article. These exhibits fail to create a genuine issue of material fact relating to the issues argued in the summary judgment briefing. The only relevant exhibits, such as certain emails between Plaintiffs and Defendants, are already part of the record. Therefore, the Court denies Plaintiffs' motion for leave to file.

v.   Motion to Withdraw

Under Local Rule IA 11-6(b) "[if] an attorney seeks to withdraw after appearing in a case, the attorney must file a motion or stipulation and serve it on the affected client and opposing counsel." Here, counsel served their motion as required. The grounds for withdrawal include a fundamental disagreement between counsel and Plaintiffs regarding case strategy and the resulting irrevocable breakdown of the attorney-client relationship. The Court finds this is good cause for withdrawal. Therefore, the motion is granted.

**VI.   CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary

1   Judgement, (ECF No. 76), is **DENIED**.

2       **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF

3   No. 77), is **GRANTED**.

4       **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Address Misinformation During

5   Hearing, (ECF No. 91), is **DENIED.**

6       **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Withdraw, (ECF No. 94), is

7   **GRANTED**.

8       **IT IS FURTHER ORDERED** that Defendants' Motion to Strike, (ECF No. 95), is

9   **DENIED**.

10       **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File, (ECF No. 96), is

11   **DENIED**.

12       **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgement for the

13   Defendants and close this case.

15       **DATED:** March 30, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**